# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JULIE DILORENZO CARDOSO,

       Plaintiff,

v.                             CASE NO. 8:18-cv-2524-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,[1]

       Defendant.

---

## O R D E R

The plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[2]   Because the decision of the Commissioner of Social Security is supported by substantial evidence, and the plaintiff does not identify reversible error, the decision will be affirmed.

### I.

The plaintiff, who was forty-six years old on the date that she was last insured and who has a college degree, has worked as a probation officer (Tr. 35).   She filed a claim for Social Security disability benefits,

---

[1]Andrew M. Saul became the Commissioner of Social Security on June 17, 2019 and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

alleging that she became disabled on June 28, 2012, due to severe degenerative disc disease and herniated discs (Tr. 67).[3] The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of obesity and L5-S1 disc herniation, but that she was not disabled (Tr. 13–20). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

The plaintiff then sought review in this court (Case No. 8:16-cv-149-AAS). United States Magistrate Judge Amanda A. Sansone entered an Order remanding the matter for further administrative proceedings because the law judge "failed to show good cause for giving the non-examining consultants' opinions greater weight than the opinion of treating physician Dr. Guirguis and improperly reached his own conclusions based on his review of the medical records" (Doc. 16, p. 9 in Case No. 16-cv-0149). Accordingly, the Appeals Council vacated the decision of the Commissioner, and remanded the case to the law judge for further proceedings consistent with the district court's Order (Tr. 735–736).

---

[3] This is an amended onset date. The original alleged onset date was September 4, 2009.

In the meantime, the plaintiff filed another application for disability insurance benefits, alleging disability since May 16, 2014, which was the day after the law judge's decision, due to degenerative disc disease and herniated discs, and neuropathy in her feet (Tr. 882). The subsequent application was denied initially and on reconsideration (Tr. 715–716, 854–55). The applications were consolidated (Tr. 951).

Administrative law judge Kurt G. Ehrman then held a supplemental hearing (Tr. 649–674). He found that the plaintiff had, through her last date insured of December 31, 2014, severe impairments of lumbar radiculopathy and obesity (Tr. 628). The law judge determined, with those impairments, the plaintiff had the following residual functional capacity during the pertinent time period (Tr. 628-29):

> [She could] perform sedentary work as defined in 20 CFR 404.1567(a), subject to the following limitations: She could lift up to 10 pounds occasionally and less than 10 pounds frequently; She could stand and/or walk for up to 2 hours, and sit for up to 6 hours, each in an 8-hour workday with customary breaks; She was limited to no more than 30 minutes of continuous standing and/or walking, followed by an option to sit for up to 30 minutes; She could not climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs; She could frequently balance, and could occasionally stoop, kneel, crouch and crawl; She could frequently reach and handle bilaterally; She had to avoid concentrated exposure to extreme

3

cold, extreme heat, wetness or humidity and excessive vibration; She had to avoid all exposure to the use of hazardous industrial machinery and unprotected heights.

The law judge concluded that, with this residual functional capacity, the plaintiff could not perform any past relevant work (Tr. 635). However, based on the testimony of a vocational expert, the law judge determined that the plaintiff's residual functional capacity did not preclude her from performing other work available in significant numbers in the national economy, such as pre-parole counseling aide, order clerk, document preparer and final assembler (Tr. 636–37). Consequently, the law judge found that the plaintiff was not disabled from her alleged onset date of June 28, 2012, through December 31, 2014, her date last insured (Tr. 638). That determination became the final decision of the Commissioner of Social Security (Tr. 623).

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that she became disabled before her insured status expired on December 31, 2014. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it

is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The crux of the plaintiff's appeal is that the Commissioner "improperly reject[ed] the work-related limitations opined by plaintiff's long-time pain specialist Dr. [Robert] Guirguis that would have directed a finding of entitlement to disability" (Doc. 14, p. 1) (emphasis omitted). This is a close call; however, giving due deference to the law judge, the Commissioner's decision is properly affirmed. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact

that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").[4]

Dr. Robert Guirguis was the plaintiff's pain management physician for several years, including during the alleged disability period. He expressed his opinion of the plaintiff's limitations in a Functional Capacity Assessment by Treating Physician form dated March 11, 2014 (Tr. 584). Dr. Guirguis opined, inter alia, that the plaintiff could lift and carry no more than 5 pounds; sit 2-4 hours, and stand/walk up to two hours, during an 8-hour workday; would need to lie down during the workday and that she would be absent three or more days per month (id.). Thus, Dr. Guirguis essentially opined that the plaintiff was disabled.

Dr. Guirguis attributed these limitations to lumbar/cervical discogenic rupture (id.). On September 5, 2014, plaintiff's counsel deposed Dr. Guirguis (Tr. 585–617), at which time Dr. Guirguis affirmed that the plaintiff's diagnostic testing results could reasonably be expected to produce chronic pain and radicular symptoms (Tr. 594). Dr. Guirguis also indicated that his opined limitations were prophylactic measures to reduce the

---

[4]Throughout the plaintiff's argument, she refers to the law judge's previous decision that was vacated and the district court's Order which evaluated that decision (see Doc. 14, pp. 11–12, 14–17, 20). These references are not, as the plaintiff argues, a helpful "overview" (Doc. 14, p. 9), but rather confuse the issues presented in this appeal. Therefore, these irrelevant references are disregarded.

possibility of pain flare-ups (see Tr. 601–02).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Hargress v. Social Security Administration, Commissioner, 883 F.3d 1302, 1305 (11th Cir. 2018). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Id. "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." Poellnitz v. Astrue, 349 Fed. Appx. 500, 502 (11th Cir. 2009).

The law judge summarized Dr. Guirguis's opinion and explained why he gave it little weight (Tr. 634). He stated (id.):

> In March 2014, treating source, Robert Guirguis, D.O., provided a written assessment of the claimant's physical function. Dr. Guirguis opined that the claimant had to lie down for 1-2 hours during each 8-hour period; needed to take longer and more frequent breaks from work than customarily allowed in the competitive workplace; would miss work 3 or more times per month; could sit for no more than 4 hours total in an 8-hour workday, and stand and/or walk for no more than 2 hours total in an 8-hour workday (Exhibits 13F;

8

14F/36). I gave this opinion little weight for a number of reasons .... Although Dr. Guirguis indicated that this opinion correlated well with the evidence of record (Exhibit 14F), I find good cause to refrain from giving this opinion substantial weight, as it is highly inconsistent with Dr. Guirguis' own medical records, which, as outlined above, demonstrate reportedly moderate levels of pain, responsive to some forms of treatment, in the context of physical examinations indicative of fairly modest musculoskeletal and/or neurological dysfunction (See, e.g., Exhibit 10F). As such, these records are inconsistent with Dr. Guirguis' contentions that the claimant requires frequent rest periods, frequent periods of lying down, and limitation to no more than 2 hours of total standing/walking in an 8-hour workday. Further, although Dr. Guirguis indicated that his opinion was supported by the objective imaging of record, at least partly because that imaging demonstrated degradation of the claimant's condition over time, radiology reports postdating the relevant period suggest that the claimant's condition actually tends toward stability over time. Still further, the above-referenced activities of daily living, reported by the claimant h[er]self, are inconsistent with the extreme functional limitations opined by Dr. Guirguis.

Additionally, the law judge noted that the plaintiff did not undergo more aggressive surgical intervention, and while Dr. Guirguis opined that such treatment is typically unsuccessful in chronic pain patients, "the general stability of the claimant's treatment regimen is at least some evidence of treatment sufficiency, and the claimant's previously-mentioned

reports of 'moderate' pain support this interpretation" (Tr. 632).

The law judge's reasoning states good cause for discounting Dr.

Guirguis's opinion of disabling limitations. Thus, although the law judge

found that the plaintiff had significant spinal abnormalities, "[t]he mere

existence of an impairment does not reveal the extent to which it limits a

claimant's ability to work ...." Robinson v. Astrue, 365 Fed. Appx. 993, 995

(11th Cir. 2010), citing Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir.

2005). Rather, it is the functional limitations that determine disability.

Moore v. Barnhart, supra; Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th

Cir. 2005); McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

In this regard, the law judge elaborated that (Tr. 631):

> trends in the medical signs observed during the
> claimant's physical examinations ... fail to
> substantiate the level of back pain alleged by the
> claimant. Rather, objective examinations of
> record typically demonstrated only modest
> symptomology such as lumbar spasm and spinal
> tenderness to palpitation (TTP), in the context of
> normal gait (e.g., Exhibits 1F/5) .... full range of
> motion (ROM), normal muscle strength, and
> normal gait (Exhibits 2F/5-6; 5F/8-10, 12-13;
> 10F/3, 30, 33-34, 40-43). Although more recent
> exams performed in 2014, closer to the claimant's
> DLI supported some level of ROM limitation, the
> claimant most often continued to display normal
> gait, obviously undermining the claimant's
> allegations of severe limitation of
> standing/walking, but also undermining the

claimant's allegations of highly-functionally-disruptive pain (e.g., Exhibits 15F/8, 13. 18). Only rarely ... did physical examination yield findings of abnormal gait (e.g., Exhibit 10F/14), and the examination report associated with at least one such examination was ambiguous at best, simultaneously noting both antalgic gait and non-antalgic gait (Exhibit 11F/3-4).

The law judge continued (Tr. 631–32):

Additionally, the claimant notably reported for consultative examination with Robert Burchett, M.D., with complaints such as those outlined above. However, musculoskeletal evaluation continued to be unsupportive, revealing full 5/5 strength of upper and lower extremities, while noting no ROM difficulties whatsoever, and remaining salient only for positive findings of tenderness of the thoracic and lumbar spine. Signs of neurologic dysfunction were similarly modest, showing intact sensation and no abnormalities of deep tendon reflexes (DTR)s, with no mention of nerve dysfunction; and although the claimant's examiner did observe unsteady gait, he later described this gait as only "mildly hesitant" and not demanding of any use of assistive device for ambulation. Overall, Dr. Burchett expressly indicated that the claimant's passive ROM was within normal limits as to both the lumbar and thoracic spine, and that she exhibited no significant deformities, grip strength loss, or manipulative difficulties (Exhibit 4F).

This substantial evidence of non-disabling clinical examination findings supports the law judge's determination that, while the plaintiff's impairments are substantial, they do not warrant the extreme functional

11

limitations opined by Dr. Guirguis. See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (good cause for discounting a treating physician's opinion when extreme functional limitations are inconsistent with the doctor's own medical records); 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work ...."); see e.g., Lustgarten v. Commissioner of Social Security, 794 Fed. Appx. 843 (11th Cir. Nov. 15, 2019) (rejecting treating physician's opinion of disabling limitations because the vast majority of examination notes state that the plaintiff had no swelling, with normal strength and range of motion, and a steady gait); Grant v. Social Security Administration Commissioner, 710 Fed. Appx, 426 (11th Cir. 2018) (noting normal clinical findings, such as normal gait, range of motion and muscle strength, were inconsistent with an opinion of disabling functional limitations).

Additionally, the law judge's finding that the plaintiff's activities of daily living were inconsistent with disabling limitations provides good cause to discount the treating physician's opinion of disabling functional limitations. See Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873 (11th Cir. 2011) ("We have held that an ALJ does not

need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion."); Crow v. Commissioner, Social Security Administration, 571 Fed. Appx. 802, 806–07 (11th Cir. 2014) (evidence of the plaintiff's daily activities provided good cause to discount the treating physician's opinion). The law judge explained (Tr. 630):

> The claimant's overall allegations of disability in the relevant period are further undermined by her report of daily activities performed therein, many of which are inconsistent with disability. On a function report completed during the relevant period, the claimant indicated that she could prepare her own 1-course meals; perform housework such as light dusting, doing the laundry, and light picking-up around the house; leave her home to run errands, perhaps 4-5 times per week; go out alone; drive a car; shop in stores and by computer; handle money without issue; indulge hobbies such as watching television, playing video games, surfing the web, and taking her son to amusement parks .... She also indicated that she regularly made trips to her parents' house (Exhibit 7E).

On the other hand, the law judge did not reject that the plaintiff had significant impairments; to the contrary, the law judge concluded (Tr. 630):

> [T]he evidence of record does support and allow the conclusion that the claimant experienced a number of impairments and symptoms

13

> significantly restrictive of her ability to work
> during the relevant period, such that, during that
> time, she could perform only [a limited range of
> sedentary work] ....

Thus, the law judge only rejected the allegations of extreme functional limitations.

The plaintiff asserts several challenges to the law judge discounting Dr. Guirguis's opinion of disabling limitations. None is persuasive.

The plaintiff argues that the law judge failed to evaluate Dr. Guirguis's opinion using the factors set forth in 20 C.F.R. 404.1527(c) (Doc. 14, p. 15).[5] Notably, the law judge "is not required to explicitly address each of [the § 404.1527] factors" in the decision. Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011). Regardless, the law judge's decision encompasses those factors.

Thus, the law judge identified Dr. Guirguis as a treating physician, so he knew of Dr. Guirguis's treatment relationship with the plaintiff and, accordingly, evaluated his opinion under the good cause

---

[5]These factors include whether the doctor examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; the consistency of the doctor's opinion compared with the record as a whole; and the doctor's specialization. § 416.927(c).

standard. Additionally, it is apparent that the law judge knew of Dr. Guirguis's specialty as a pain physician based on the records and treatment modalities (see Tr. 632). Moreover, the law judge expressly considered the consistency of Dr. Guirguis's opinion with his treatment notes and the overall record (Tr. 634). Therefore, the contention that the law judge failed to consider the 404.1527(c) factors is meritless.

The essence of the plaintiff's argument is that the law judge improperly weighed these factors (see Doc. 14, pp. 9–10, 12). Thus, she contends that Dr. Guirguis is a board-certified specialist who had "the best foundation for providing opinions about [the plaintiff's] work-related limitations," and "the only examining physician who has provided detailed opinions about work-related limitations, and the only medical source[] whose opinions are based on medical findings which extend into 2014" (Doc. 14, pp. 13–14). However, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983); Hunter v. Social Security Administration, Commissioner, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific

15

justification for it."). The law judge has identified such evidence (see supra, pp. 8–13).

Additionally, the plaintiff quibbles that the law judge incorrectly characterized Dr. Guirguis's medical records as "highly inconsistent" with Dr. Guirguis's opinion of the plaintiff's functional capacity. Specifically, the plaintiff argues (Doc. 14, p. 16):

> [T]his characterization is disingenuous where the Records show ... that Dr. Guirguis obtained multiple MRIs with significant objective findings ... and [Dr. Guirguis] performed multiple examinations showing tenderness, spasm and restricted range of motion in the thoracic and lumbar spines ....

This argument is unavailing. First, the law judge did not state that the MRIs were "highly inconsistent"; rather, he specified "Dr. Guirguis's own medical records which ... demonstrate reportedly moderate levels of pain, responsive to some forms of treatment, in the context of physical examinations indicative of fairly modest musculoskeletal and/or neurological dysfunction" were highly inconsistent with disabling functional limitations (Tr. 634) (emphasis added). The law judge could reasonably make that determination because, as the Commissioner shows, the majority of Dr. Guirguis's treatment records demonstrate the plaintiff had a normal gait, normal strength, normal range of motion and/or normal sensory findings (Doc. 15,

16

pp. 6–7). The law judge, furthermore, acknowledged that "objective examinations of record typically demonstrated ... lumbar spasm and spinal tenderness to palpitation," but he could reasonably conclude that those relatively modest findings did not support "allegations of highly-functionally-disruptive pain" (Tr. 631).

The plaintiff argues further that the law judge "misread[] ... the MRI reports" when he stated that "radiology reports postdating the relevant period suggest that the claimant's condition actually tends toward stability over time" (Doc. 14, p. 17). The plaintiff has not shown that the law judge's statements regarding MRI findings during the post-insured period are inaccurate (compare Tr. 580 with Tr. 1145, 1352).

Rather, the plaintiff emphasizes Dr. Guirguis's opinion that the plaintiff's February 2014 lumbar MRI is worse than her 2011 MRI (Doc. 14, p. 18; see Tr. 593). This is a comparison of MRIs from a different time period; the law judge was referring to post-insured period MRIs (see Tr. 632) (comparing 2014 and 2016 MRIs). In all events, whether the MRIs from the post-insured period showed stability of the plaintiff's back condition is irrelevant to the primary reasons the law judge gave for discounting Dr. Guirguis's opinion of disabling limitations during the pertinent time period, namely, the plaintiff's overall non-disabling findings on physical

examination; typical reports of only moderate pain and corresponding responsiveness to treatment; and the plaintiff's varied activities of daily living (see Tr. 634). Therefore, any purported error in this regard is harmless, as substantial evidence remains in support of the law judge's determination to discount Dr. Guirguis's opinion of disabling limitations. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (erroneous statements of fact by the law judge were harmless when the law judge's decision was otherwise supported by substantial evidence).

Moreover, the plaintiff argues (Doc. 14, p. 19):

> Despite all of this compelling objective test evidence, which the ALJ seems to acknowledge at least to some degree, the ALJ does not adequately explain[] why the lumbar herniation and degeneration that involves nerve roots is not a medical condition that corroborates Dr. Guirguis' assertions that [the plaintiff] suffers from chronic, severe low back pain radiating into her right leg from these conditions that is the basis for his assessments about her limitations (see TR 594). It is submitted that the ALJ has again engaged in his own interpretation of the medical records ....

This contention is meritless. "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor," Cooper v. Astrue, 373 Fed. Appx. 961, 962 (11th Cir. 2010), and "while a physician's opinion on the matter will be considered, it is not dispositive."

18

Beegle v. Social Security Administration Commissioner, 482 Fed. Appx. 483, 486 (11th Cir. 2012).

Therefore, the law judge evaluates a physician's opinion in light of the other evidence presented. 20 C.F.R 404.1512(b)(2), 404.1513, 404.1527, 404.1545; see, e.g., Green v. Social Security Administration, 223 Fed. Appx. 915, 922–23 (11th Cir. 2007) (rejecting the contention that the law judge played doctor in discounting opinion of treating physician in part due to treatment notes inconsistent with the opinion). Here, there was ample evidence in the record for the law judge's determination of the plaintiff's residual functional capacity (see Tr. 630–34). Furthermore, although a plaintiff may identify evidence that is consistent with, or supports disability, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, supra, 386 F.3d at 1027; see Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (deference to the law judge's decision if it is supported by substantial evidence even though the evidence may preponderate against it).

Moreover, the plaintiff argues that the opinions of the non-examining reviewing physicians that she could perform light work are "minimally probative opinions [that] do not qualify to adequately contradict the opinions by Dr. Guirguis" (Doc. 14, p. 19). This contention is meritless

because the law judge did not discount Dr. Guirguis's opinion of extreme limitations on this basis (see Tr. 634). To the contrary, the law judge gave little or no weight to those opinions (Tr. 633–34).

Additionally, the plaintiff nitpicks that the law judge erroneously stated that Dr. Burchett's report contained "opinions," because Dr. Burchett did not opine on the plaintiff's functional limitations (see Doc. 14, p. 20). The law judge was referring to the portion of Dr. Burchett's report titled "Impression[s]" (Tr. 350), which is a term that is regularly associated with a physician's opinion. Regardless, the law judge's point was that Dr. Burchett's findings on physical examination were not consistent with disabling functional limitations, and that finding is supported by substantial evidence (see Tr. 348–52).[6]

In sum, the law judge stated good cause for discounting Dr. Guirguis's opinion of debilitating functional limitations, and that determination is supported by substantial evidence. See Hargress v. Social Security Administration, Commissioner, supra, 883 F.3d at 1302; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) ("Substantial evidence is

---

[6]The plaintiff also argues, inconsistently, that the law judge disregarded Dr. Burchett's opinion that the plaintiff cannot sit or stand for longer periods. However, as the plaintiff states, Dr. Burchett "did not complete any form or give specific work-related limitations" (Doc. 14, p. 20). Furthermore, that comment is too vague to be probative of the plaintiff's work limitations.

more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

Furthermore, the plaintiff has not identified evidence which compelled the law judge to accept Dr. Guirguis's opinion of extreme functional limitations. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings"). Therefore, the plaintiff's challenge to the weight given to Dr. Guirguis's opinion of disabling limitations fails.

IV.

The plaintiff's second argument is that her "claim should be remanded for a de novo administrative hearing with a different ALJ" pursuant to the Supreme Court's ruling in Lucia v. Securities and Exchange Commission, ___ U.S. ___, 138 S.Ct. 2044 (2018) (Doc. 14, p. 21) (emphasis omitted).

In Lucia, the Supreme Court ruled that administrative law judges overseeing hearings for the Securities and Exchange Commission are subject to the Appointments Clause of the Constitution, which requires appointment to their positions by the President, a court of law, or the head of

the department. Id. After Lucia, the Social Security Administration applied this ruling to its administrative law judges and, on July 26, 2018, the Acting Commissioner approved the administrative law judge appointments as her own. The plaintiff argues that the adjudication of her claim violated her constitutional rights because the law judge was not at that time appointed consistent with that provision (Doc. 14, pp. 21–25).

The defendant responds that the plaintiff forfeited this contention because Lucia held that a party "who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief" id. at 2055, and "at no point in the administrative process ... did Plaintiff ever present the argument that the law judges are inferior officers under the Appointments Clause" (Doc. 15, p. 14). The plaintiff concedes that she did not raise this issue at the administrative level but argues that she should be excused from this requirement because it would have been futile to raise it at that point (Doc. 14, pp. 23–24).

As recounted in the defendant's brief, cases too numerous to list have rejected attacks on the validity of the law judge's appointment under the Appointments Clause where the claimant failed to assert a timely constitutional challenge at the administrative level (see Doc. 15, pp. 14–22). This includes the holdings of courts in this district. See, e.g., Valle-Roman

v. Commissioner of Social Security, No. 6:18-cv-1158-ORL-TBS, 2019 WL 1281171 at *2 (M.D. Fla. Mar. 20, 2019); Gary v. Commissioner of Social Security, No. 8:17-cv-2710-T-JSS, 2018 WL 7436496 at *6 (M.D. Fla. Nov. 30, 2018). Moreover, since the filing of the defendant's brief, courts continue to hold that the failure to raise this issue in a timely manner forfeits the contention. See, e.g., Burr v. Commissioner of Social Security, No. 5:18-cv-518-OC-18PRL, 2019 WL 3821572 at *3 (M.D. Fla. May 17, 2019), report and recommendation adopted, No. 5:18-cv-518-OC-18PRL, 2019 WL 3817486 (M.D. Fla. Aug. 14, 2019); Zayas o/b/o J.X.A. v. Commissioner of Social Security, No. 8:18-cv-2918-T-MAP, 2020 WL 487153 at *6 (M.D. Fla. Jan. 30, 2020).

The plaintiff argues that she should be excused for failing to raise this issue because it would have been futile, as the law judge lacked authority to act on this matter (Doc. 14, p. 24). Notably, courts within this district have rejected the plaintiff's futility argument. See Burr v. Commissioner of Social Security, supra, 2019 WL 3821572 at *3; Gagliardi v. Social Security Administration, No. 18-cv-62106, 2020 WL 966595 at *4 (S.D. Fla. Feb. 28, 2020).

It is similarly unpersuasive here. Thus, the plaintiff has not identified any reason why she could not have asserted her challenge to the

23

constitutionality of the proceeding at the administrative level. See 20 C.F.R. 404.940 (requiring that any request to disqualify the ALJ must be made to the ALJ at the "earliest opportunity" and, if not resolved, then the objection concerning the ALJ is to be presented to the Appeals Council). She simply did not do so. Therefore, the plaintiff's post hoc rationale that it would have been futile does not excuse her failure to timely raise the issue. Accordingly, the plaintiff's argument based on the Appointments Clause is rejected as untimely.

Moreover, the contention, even if timely, would be meritless. Thus, the Acting Commissioner, on July 26, 2018, as the plaintiff acknowledges (Doc. 14, p. 23), approved the appointments as her own. The law judge issued his decision on July 27, 2018. Therefore, at the time the law judge issued his opinion, the law judge seemingly had been properly appointed by the head of the department. The plaintiff makes no argument that, when the law judge's decision was issued, the deficiency had not been corrected.

## V.

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby **AFFIRMED**.

The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 17th day of March, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE